EL PUEBLO DE PUERTO RICO, peticionario, *v.* DONALD TURNER GOODMAN, acusado y recurrido.

*Número:* O-79-635     *Resuelto:* 6 de marzo de 1981

---

*Héctor A. Colón Cruz, Procurador General, y Ricardo Alegría Pons, Procurador General Auxiliar,* abogados del peticionario; *Víctor M. Negrón Padilla, Ángel M. Castillo Rodríguez y Joaquín Peña Peña,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El presente caso no tendría mayor trascendencia a no ser por unos hechos, cuyo acaecimiento nos preocupa, sobre todo si implican la existencia de determinadas prácticas policíacas. Siempre hemos mantenido como norma inalterable el derecho a una prensa libre, que no lo sería si a su vez no tuviera la prensa el derecho de estar bien informada. Este derecho, sin embargo, tiene que ejercitarse dentro del marco de la Carta de Derechos, sin violentar el fundamental principio de inviolabilidad de la dignidad del ser humano, consagrado en su primerísima oración. La Policía tiene el deber de propiciar a los medios informativos las necesarias facilidades para que éstos se enteren y puedan difundir aquellas noticias que el pueblo tiene derecho de conocer, pero sin trasponer innecesariamente la intimidad y mancillar la honra de las personas, que son consubstanciales a su esencial dignidad.

En la madrugada del 7 de marzo de 1979, agentes de la División de Drogas y Narcóticos de la Policía se personaron en el apartamiento del acusado Donald Turner Goodman, en el condominio La Mancha en Isla Verde, para diligenciar una orden de arresto librada en su contra por alegada infracción de la Ley de Sustancias Controladas. Los agentes tocaron a la puerta, identificándose como policías, y el acusado, a medio vestir, les abrió. Inmediatamente los agentes entraron al apartamiento seguidos por periodistas de "El Vocero", "The San Juan Star", "El Mundo", y reporteros con cámaras de televisión. La versión de los hechos de aquí en adelante es conflictiva.

Víctor Millán Cruz, agente de la División de Drogas, declaró que tan pronto entró al apartamiento vió unas plantas en el balcón que le parecían ser de marihuana, y se incautó de ellas. El análisis químico dio positivo y el Sr. Turner fue acusado por la posesión ilegal de dichas plantas.

La versión del Sr. Turner desmiente lo declarado por el agente del Estado. Dijo que los policías entraron a su residencia, lo sujetaron a él y a su esposa y procedieron a registrar todo el apartamiento. Describió el apartamiento y su configuración para demostrar que el balcón no era visible desde la entrada. Ello quedó corroborado mediante planos, fotografías y un croquis hecho en una pizarra. Declaró que las plantas de marihuana, que estaban sembradas en unos tiestos, no eran visibles desde la sala, porque estaban en el balcón tras el acondicionador de aire, y porque había unas cortinas frente a la puerta corrediza de cristal que separaba el balcón de la sala, que estaban cerradas.

La prueba incontrovertida estableció que los agentes policíacos registraron todo el apartamiento, y ocuparon una bolsa de azúcar que estaba en la nevera y una cantidad de dinero que había en unas gavetas en un dormitorio. Mientras los agentes registraban, los periodistas tomaban notas y los camarógrafos tomaban películas. Entre agentes y reporteros había ocho personas. Al cabo de diez a quince minutos se llevaron arrestados al Sr. Turner y a su esposa. Ella tuvo que vestirse y fue vista "media [sic] desnuda" por agentes que la siguieron al dormitorio, conforme a la versión del Sr. Turner. El apartamiento quedó en completo desorden. Declaró el Sr. Turner: "La ropa la sacaron de las gavetas. La ropa del 'closet' estaba en el piso. Las matas las habían sacado. Las maletas estaban fuera del 'closet'. Los muebles estaban virados. Los cogines [sic] estaban en el piso y mis libros estaban tirados por todos los sitios". Se admitieron fotografías sobre esta situación.

El juez de instancia declaró nulo el registro por ser ilegal. Recurre ante nosotros el Pueblo, alegando que las plantas de marihuana fueron incautadas válidamente por estar a "plena vista" del agente y no ser producto de un registro. *Pueblo* v. *Dolce*, 105 D.P.R. 422 (1976). No tiene razón.

El juez de instancia aquilató las versiones conflictivas de los hechos, creyó la versión del acusado y descartó la de los agentes. No tenemos base para intervenir con la apreciación de la prueba que hizo el tribunal de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad. *Pueblo* v. *Torres Montañez*, 106 D.P.R. 125 (1977); *Pueblo* v. *Pacheco Betancourt*, 92 D.P.R. 698 (1965). No habiendo merecido credibilidad la versión del agente de que las plantas de marihuana estaban a plena vista, es inaplicable la doctrina del caso de *Dolce*, supra.

Ya desde *Chimel* v. *California*, 395 U.S. 752 (1969), 23 L.Ed.2d 685, 968, el Tribunal Supremo de los Estados Unidos reconoció que el mero hecho de que los agentes policíacos tengan una orden de arresto válida no justifica el registro total de un hogar donde se encuentra el acusado. En *Agnello* v. *United States*, 269 U.S. 20, 33 (1925), 70 L.Ed. 145, y *Payton* v. *New York*, 445 U.S. 573 (1980), 63 L.Ed.2d 639, se estableció que el mero hecho de que exista causa probable para creer que objetos sujetos a allanamiento están en un hogar no justifica un registro sin orden.

A los fines de la Cuarta Enmienda hay una diferencia constitucional entre hogares y automóviles. *Pueblo* v. *Vargas Delgado*, 105 D.P.R. 335 (1976). El derecho a la intimidad cobra mayor importancia cuando el Estado interviene en los hogares de los ciudadanos. *Payton* v. *New York*, supra. Solamente bajo circunstancias excepcionales se justifica el registro de una residencia, sin orden de allanamiento. Aquí no hay tales circunstancias.

No puede justificarse tampoco el allanamiento bajo la jurisprudencia que permite registros incidentales a un arresto

legal. Los hechos demuestran que al entrar al apartamiento del acusado, los agentes tenían control sobre la persona del acusado y su esposa. Ellos no reaccionaron violentamente ni trataron de escapar. No tenían armas sobre sus personas ni había peligro de que se armaran para agredir a los agentes. Estaban impedidos físicamente de hacerlo por la presencia y el control que sobre ellos tenían los agentes. Además, no se justificaba registrar el balcón en busca de armas, pues éste no estaba dentro del área de arresto ni al alcance inmediato del arrestado, *Pueblo* v. *Dolce*, supra, ni es ese un lugar donde se guardan armas. Si los agentes tenían motivos fundados para creer que había material delictivo en la residencia, debieron obtener una orden de allanamiento.

■ El tráfico ilegal de drogas y narcóticos es uno de los males que aqueja hoy día a nuestra comunidad. Es laudable todo propósito de perseguir con máxima diligencia y encausar a quienes se lucran de ello. Pero hágase todo conforme a la ley y con la debida consideración a la persona humana. No hay explicación en los autos de este caso para la intervención de reporteros y camarógrafos en las diligencias sobre la orden de arresto. No existe justificación para su intromisión en el hogar de los esposos Turner ni puede haber justificación para la conducta oficial que la permitió ni para el proceder oficial en menosprecio de la intimidad y del respeto al hogar de este matrimonio. Todo ello merece nuestra más enérgica censura y nuestra admonición de que los tribunales no habrán de sancionar tales prácticas.

*Se anulará el auto expedido y se confirmará la resolución recurrida.*

Los Jueces Asociados Señores Martín, Díaz Cruz y Negrón García concurren en el resultado. El Juez Asociado Señor Díaz Cruz hace constar lo siguiente:

"El Juez Asociado Señor Díaz Cruz está conforme con el resultado por entender que no deben adoptarse *a priori* unas reglas de ámbito y acción permisibles para dirigir la conducta

de la Policía con uniformidad en todos los casos de arresto, los cuales por necesidad plantean situaciones distintas que requieren una diligencia distinta de parte de la Policía."