EL PUEBLO DE PUERTO RICO, recurrido, *v.* JOSÉ LUIS PÉREZ PÉREZ y LUZ NEREIDA ARIAS APONTE, acusados y peticionarios.

*Número:* O-84-113      *Resuelto:* 26 de noviembre de 1984

*Ángel R. Concepción Velázquez*, abogado de los peticionarios; *Doris Zoé Pons Pagán, Procuradora General Auxiliar*, abogada de El Pueblo, recurrido.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El recurso ante este foro plantea una cuestión novel: ¿hasta qué punto se extienden las garantías del Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico a los pasillos y otras zonas comunes privadas de un condominio?

El 14 de abril de 1983 la Policía recibió una confidencia anónima al efecto de que en el apartamento 804 de un condominio de Carolina se distribuía cocaína y marihuana y se poseían armas ilegales. Se ordenó al agente M. A. Rodríguez que vigilase el apartamento.

El 3 de mayo de 1983 el agente se dirigió al condominio, compuesto de dos torres enteramente residenciales, cercadas

por una verja de alambre eslabonado de seis pies de alto. La zona tiene dos vías de acceso con portones eléctricos para impedir la entrada de vehículos extraños. Cerca de los portones hay un acceso peatonal con guardia de seguridad en servicio constante. El agente logró acceso a la zona cercada en forma subrepticia, valiéndose de un pequeño portón lejos del área de vigilancia utilizado para el recogido de basura. Su entrada a las torres fue también clandestina. La puerta siempre se mantiene cerrada con llave. El agente aguardó a que alguien saliera y entonces irrumpió en el edificio, utilizó un ascensor hasta el octavo piso y estableció allí su vigilancia. Después el agente declararía que vio primero a una dama y luego a un caballero tocar a la puerta del apartamento 804, hablar algo con el peticionario al éste abrir la puerta y entregar un dinero en el pasillo al darles el peticionario un sobre pequeño color manila en un caso y una bolsita plástica en el otro. Dos días más tarde el agente observó al apelante llevar a cabo una transacción similar en el garaje privado del condominio, al cual había penetrado sin autorización.

El agente virtió los hechos reseñados en una declaración, la que sirvió de base para la expedición de una orden de allanamiento. Éste se realizó y se ocupó la evidencia delictiva a que se refieren las acusaciones formuladas. La defensa presentó una moción de supresión de prueba. El Tribunal Superior la denegó. Expedimos un *certiorari* para considerar la cuestión.

El asunto se examinará exclusivamente a la luz de la garantía contra registros, allanamientos e incautaciones irrazonables contenida en la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico. En otras ocasiones hemos señalado el historial y contenido particulares de esta cláusula en Puerto Rico. *Pueblo* v. *Dolce*, 105 D.P.R. 422 (1976); *Pueblo* v. *Lebrón*, 108 D.P.R. 324 (1979). Las referencias a la jurisprudencia estadounidense sirven tan sólo para fines comparativos.

En los casos concernientes a la garantía contra registros, allanamientos e incautaciones irrazonables este Tribunal se ha esforzado por lograr el debido equilibrio entre los valores protectores de la intimidad y dignidad del ser humano y los que salvaguardan a la comunidad contra el azote del crimen. A tal efecto nuestra jurisprudencia se ha concentrado en la operación de ciertos criterios en las circunstancias específicas del caso a resolver. Nos preguntamos en este género de situaciones: ¿Existen circunstancias apremiantes que exijan prescindir de una orden judicial previa? ¿Tiene la persona que reclama protección bajo la Sec. 10 del Art. II un derecho razonable a abrigar, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete? *Pueblo* v. *Lebrón*, supra, págs. 328–331; *Pueblo* v. *Torres Resto*, 102 D.P.R. 532 (1974); *Pueblo* v. *Turner Goodman*, 110 D.P.R. 734 (1981).

Por razones demográficas y de diversa índole se ha ido desarrollando en Puerto Rico el concepto de la propiedad horizontal. No hallamos base para sostener que en este país de mucha gente y poca tierra aquellos que resuelvan vivir en condominios no tienen derecho razonable a abrigar que su intimidad se respete a un grado comparable al de los habitantes de residencias tradicionales. Un condómino espera que por los pasillos y otras áreas comunes de su edificio(1) transiten únicamente otros condueños y personas invitadas. En casos como el presente los condueños tienen derecho a confiar que no pululen por las zonas protegidas invasores e intrusos. Los pasillos de los condominios no son calles de la ciudad, ni su garaje es menos privado que el de otro tipo de hogar.

Por las mismas razones expresadas, los condominios presentan a las fuerzas del orden público dificultades especiales para el establecimiento de una vigilancia orde-

---

(1) El vestíbulo de ciertos condominios puede presentar una situación especial en ciertas circunstancias.

nada. Como regla general, (²) la solución radica, cuando la vigilancia exterior no basta, en que la Policía acuda ante un magistrado y obtenga, tras el trámite de rigor, su autorización para penetrar en las áreas comunes de la propiedad para establecer puntos de observación satisfactorios. En el caso presente no hay indicación alguna de la imperiosidad de actuar al instante. La propia Policía tardó diecinueve días en comenzar a actuar después de recibir la confidencia. Había oportunidad amplia para obtener la orden judicial requerida.

Es interesante observar, por último, que aunque existe autoridad en contrario, un número considerable de tribunales en Estados Unidos les extiende la protección de la Enmienda Cuarta a las áreas comunes de estructuras multipisos. Véanse: *United States* v. *Carriger*, 541 F.2d 545 (6th Cir. 1976); *United States* v. *Cassity*, 720 F.2d 451 (6th Cir. 1983); *United States* v. *Bedford*, 519 F.2d 650 (3rd Cir. 1975); *Fixel* v. *Wainwright*, 492 F.2d 480 (5th Cir. 1974); *United States* v. *Case*, 435 F.2d 766 (7th Cir. 1970); *United States* v. *Rosenberg*, 416 F.2d 680 (7th Cir. 1969); *United States* v. *Fluker*, 543 F.2d 709 (9th Cir. 1976); *State* v. *Di Bartolo*, 276 So. 2d 291 (La. 1973); *Garrison* v. *State*, 345 A.2d 86 (Md. 1975); *People* v. *Trull*, 380 N.E.2d 1169 (Ill. App. 1978); *Bunn* v. *State*, 265 S.E.2d 88 (Ga. App. 1980); *People* v. *Beachman*, 296 N.W.2d 305 (Mich. App. 1980); *United States* v. *Booth*, 455 A.2d 1351 (D.C. App. 1983). Véanse, además: W. R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment*, St. Paul, Minn., West Pub. Co., 1978, Vol. 1, pág. 298 y ss.; Nota, *United States* v. *Carriger*, 4 N. Ky. L. Rev. 161 (1977).

*Se revocará la resolución recurrida.*

El Juez Asociado Señor Rebollo López disiente y se reserva el derecho de emitir opinión al respecto.

---

(²) Cuando el administrador de un edificio, su delegado u otro inquilino autorice la entrada a un condominio, varios tribunales reconocen entonces que la actuación de la Policía al vigilar áreas comunes es legítima. *Hubert* v. *State*, 638 P.2d 677 (Alaska 1981); *United States* v. *Luschen*, 614 F.2d 1164 (8th Cir. 1980).